**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NANCY LIVI, on behalf of herself   :
and all others similarly situated,    :
    Plaintiff,       :   CIVIL ACTION
             :   No. 15-5371
      v.       :
             :
HYATT HOTELS CORP., et al.,   :
    Defendants.     :

**November 6, 2017**               **Anita B. Brody, J.**

## <u>MEMORANDUM</u>

Plaintiff Nancy Livi ("Livi") brings suit on behalf of herself and a proposed class[1] of

banquet servers against four defendants: Defendant Hyatt Hotels Corporation ("HHC"),

Defendant Hyatt Corporation d/b/a Hyatt at the Bellevue ("Hyatt Corporation"),[2] Defendant

Bellevue, Inc. and Defendant Bellevue Associates (all four defendants collectively referred to as

"Hyatt") for violations of the Pennsylvania Minimum Wage Act, 43 PA. STAT. § 333.101, *et seq.*

("PMWA"), violations of Pennsylvania's Wage Payment and Collection Law, 43 PA. STAT. §

260.1, *et seq.* ("WPCL"), and for Unjust Enrichment.  Livi also brings suit on behalf of herself

and a proposed sub-class[3] of banquet servers against Hyatt for violation of the Philadelphia

---

[1] The proposed class is defined as "[a]ll individuals currently or formerly employed in Banquet Server positions by Defendants at Hyatt hotels in Pennsylvania, beginning four years from the date of filing of this Complaint through the date of final judgment in this case."  Compl. ¶ 45, ECF No. 1.

[2] In the motion for summary judgment, this entity is listed as "Hyatt Corporation d/b/a Hyatt at the Bellevue, Inc."  *See* Defs.' Mot. for Summ. J. 1, ECF No. 43 ("Defs.' Mot.").

[3] The proposed sub-class is defined as "[a]ll individuals currently or formerly employed in Banquet Server positions by Defendants at Hyatt hotels in Philadelphia, Pennsylvania, beginning

Administrative Code, § 9-614.[4]  Defendants[5] move for summary judgment on all remaining

counts[6] of the Complaint.  For the reasons set forth below, I will grant Defendants' motion for

summary judgment in its entirety.

## I.     BACKGROUND[7]

Livi is a resident of Philadelphia, Pennsylvania and was employed as a Banquet Server at

the Hyatt at the Bellevue, a hotel in Philadelphia, Pennsylvania, from 1986 to on or about

October 29, 2014.  Pl.'s Statement of Undisputed Material Facts in Opp'n to Defs.' Mot. for

Summ. J. ¶ 8, ECF No. 45-1 ("Pl.'s Statement"); Defs.' Factual Statement in Support of its Mot.

for Summ. J. 1, ECF No. 53 ("Defs.' Statement").

Hyatt Corporation manages the Hyatt at the Bellevue.[8]  Pl.'s Statement ¶ 4; Defs.'

Statement 1.  Hyatt Corporation is a Delaware corporation and a subsidiary of HHC, which is

---

[4] six years from the date of filing of this Complaint through the date of final judgment in this case."  Compl. ¶ 46.

[4] The proposed Rule 23 class and sub-class have not been certified, and therefore only Livi's claims as an individual are before this Court.  However, because this Court's jurisdiction over these claims is determined under the Class Action Fairness Act ("CAFA"), the jurisdictional analysis will necessarily discuss Livi's claims on behalf of the proposed class and sub-class.

[5] As resolved on the record during the teleconference held on November 2, 2017, the Motion for Summary Judgment is deemed filed by all defendants, despite a typographical error in the motion.

[6] Livi initially also brought a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), on behalf of herself and a proposed FLSA Collective Action class.  The parties have stipulated to dismissal of the FLSA claim.  *See* Stipulation of Voluntary Dismissal, ECF No. 30.

[7] Unless otherwise noted, the facts presented in this section are undisputed by the parties in their briefings on summary judgment.  Facts presented with a citation to Defendants' affidavit, Decl. of Russ Melaragni Addressing the Questions in the Court's Order on CAFA Jurisdiction, ECF No. 87 ("Defs.' Affidavit"), are included in this section only for purposes of the jurisdictional analysis.

[8] Livi states that "[d]uring the class period" HHC owned and operated the Hyatt at the Bellevue and the other two identified Hyatt hotels in Pennsylvania.  Pl.'s Statement ¶ 3.  Hyatt states that Hyatt Corporation operates the Hyatt at the Bellevue and previously operated the other two identified hotels in Pennsylvania, and that the Hyatt at the Bellevue is owned by Bellevue Associates.  Defs.' Statement 1-2.  Resolution of these contrary assertions is not necessary to decide this motion.

also a Delaware corporation.  Pl.'s Statement ¶¶ 1-2; Defs.' Statement 1; Defs.' Affidavit ¶¶ 7-8.

Both HHC and Hyatt Corporation have a principal place of business in Illinois.  Defs.' Affidavit

¶¶ 7-8.  Although the exact relationship of Bellevue, Inc. and Bellevue Associates ("Bellevue

Defendants") to HHC and Hyatt Corporation is unclear, both entities are incorporated in

Pennsylvania and have a principal place of business in Pennsylvania.  Pl.'s Statement ¶ 5; Defs.'

Statement 1; Defs.' Affidavit ¶ 13.

### A.  Banquet Events

The Hyatt at the Bellevue holds banquets, wedding receptions, meetings, parties and

similar events ("Banquet Events") for customers and employs servers ("Banquet Servers") who

work at these events.  Pl.'s Statement ¶ 6; Defs.' Statement 1.  There are nine spaces at the Hyatt

at the Bellevue where Banquet Events can be held, including XIX, which is a restaurant that is

sometimes used as a Banquet Event space.  Pl.'s Statement ¶ 7; Defs.' Statement 1.

Banquet Servers are responsible for serving food and beverages to guests at their tables at

plated-service events and staffing the food stations at buffet-style events.  Pl.'s Statement ¶ 13;

Defs.' Statement 1.  Banquet Servers greet guests, discuss menu offerings with guests, provide

recommendations to guests when asked, clean and set tables, and engage in general banquet

preparation and related tasks.  *Id.*  Banquet Servers do not have a sales role and do not sell or

solicit Banquet Events.  Pl.'s Statement ¶ 14; Defs.' Statement 1.  Bartenders are also considered

Banquet Servers because their roles are interchangeable.  Pl.'s Statement ¶ 13; Defs.' Statement

1.  Banquet Servers typically do not receive tips from guests at Banquet Events.  Pl.'s Statement

¶ 22; Defs.' Statement 1.  Hyatt enforces a policy prohibiting the presence of tip trays or jars for

the collection of tips during events at the Hyatt at the Bellevue and has a policy discouraging

Banquet Servers from receiving tips from banquet guests.  Pl.'s Statement ¶ 23; Defs.' Statement 1.

### B.  Banquet Event Contracts

Customers enter into written contracts for Banquet Events at the Hyatt at the Bellevue in advance.  Defs.' Statement ¶ B(1); Pl.'s Sur-Reply in Further Opp'n To Defs.' Mot. for Summ. J. 4, ECF No. 62 ("Pl.'s Sur-Reply").  These contracts are based on a common template supplied by HHC.  Pl.'s Statement ¶ 25; Defs.' Statement 1.  Each contract sets forth the equipment, room rental, food and beverage subtotals for the event, applicable taxes, and generally requires that all charges be paid at least seventy-two hours in advance.  Defs.' Statement ¶ B(1); Pl.'s Sur-Reply 4.  Each contract for a Banquet Event contains a service charge provision.  Pl.'s Statement ¶ 26; Defs.' Statement 1.  The service charge is added to the cost of food and beverage and sometimes to the cost of room rental as well.  *Id.*; Pl.'s Statement, Ex. H, Gold Dep. 75:23-76:7, ECF No. 45-10.  Between 2011 and 2012, Hyatt increased the service charge from 20% to 21% of such costs.  Pl.'s Statement ¶ 28; Defs.' Statement 1; Gold Dep. 76:16-77:2.

Hyatt retains a portion of the service charge collected on food and beverage costs and remits 15% of the cost of food and beverage for each Banquet Event to Banquet Servers and other banquet staff.  Pl.'s Statement ¶¶ 30-31; Defs.' Statement 1.  The 15% payment is distributed by Hyatt equally among each Banquet Server/bartender and banquet captain[9] working at each Banquet Event.  Pl.'s Statement ¶ 30; Defs.' Statement 1.  Hyatt retains the entirety of the service charge collected from customers on room rental and does not distribute a portion of the service charge collected for room rental to Banquet Servers.  Pl.'s Statement ¶ 33; Defs.' Statement 1.  Prior to 2015, these banquet contracts did not provide a breakdown of the

_____

[9] Banquet captains supervise Banquet Servers and bartenders.  Pl.'s Statement, Ex. D, Cowles Dep. 12:8-16, ECF No. 45-6.

distribution of the service charge.  Pl.'s Statement ¶ 39; Defs.' Statement 1, Gold Dep. 115:2-9; 115:16-116:6.

### C.  Livi's Compensation

Hyatt paid Livi for her work as a Banquet Server through a combination of hourly wages and distributions from the service charges that Hyatt collected on Banquet Events.  Defs.' Statement ¶ A(1); Pl.'s Sur-Reply 4.  From September 29, 2012, to the date of her separation, Livi's hourly rate ranged from $11.24 to $11.57 per hour.  Defs.' Statement ¶ A(2); Pl.'s Sur-Reply 4.  Throughout the course of Livi's employment, service charge distributions constituted more than 50% of Livi's total compensation.  Defs.' Statement ¶ A(3); Pl.'s Sur-Reply 4.  In 2013, Livi earned approximately $57,000 in total compensation, with distributions from service charges constituting approximately $37,500 of this total compensation.  Defs.' Statement ¶ A(4); Pl.'s Sur-Reply 4.

Livi sometimes worked more than forty hours in a work week ("overtime hours"), and was authorized to do so, but was not paid "time-and-a-half" (a wage of 1.5 times her regular hourly wage) for overtime hours worked.  Pl.'s Statement ¶¶ 15, 16, 18; Defs.' Statement 1. During the course of Livi's employment, no calculations were performed to determine whether Banquet Servers were exempt from the overtime requirements of the PMWA.  Pl.'s Statement ¶ 20; Defs.' Statement 2; Pl.'s Statement, Ex. A, HHC's Answers to Pl.'s First Set of Interrogs. 11, ECF No. 45-3.

### D.  Additional Facts Relevant to Jurisdiction

Hyatt Corporation is the entity responsible for hiring, supervising and paying the wages of the proposed class and proposed sub-class of Banquet Servers.  Defs.' Affidavit ¶¶ 9-11.[10] The Bellevue Defendants do not exercise any control over the employment practices of Hyatt Corporation.  Defs. Affidavit' ¶ 15.  There are over 100 members of the proposed class and sub-class, of which greater than two-thirds are citizens of Pennsylvania.  Defs.' Affidavit ¶¶ 3-6.  The amount in controversy is at least $7,626,152.  Defs.' Affidavit ¶ 30.  During the three-year period preceding the filing of the Complaint, a class action has not been filed against any of the Defendants asserting the same or similar factual allegations on behalf of the same or other persons.  Defs.' Affidavit ¶ 31.

## II.    JURISDICTION

The Complaint was originally filed in this Court pursuant to "federal question" jurisdiction, 28 U.S.C. § 1331, because Livi asserted a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  The parties later stipulated to dismissal of Livi's FLSA claim.  Defendants then filed an affidavit attesting to certain facts relevant to this Court's jurisdiction over the remaining state law claims under CAFA.[11]

"CAFA provides federal courts with jurisdiction over civil class actions if the 'matter in controversy exceeds the sum or value of $5,000,000,' the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any

---

[10] Hyatt Corporation states that it was responsible for the hiring, supervision and payment of Banquet Servers at the Hyatt at the Bellevue from September 29, 2009 to the present, and for the hiring, supervision and payment of Banquet Servers at the other identified hotels from September 29, 2009, until they became franchises. Defs.' Affidavit ¶¶ 9-11.

[11] The Third Circuit has acknowledged that "district courts have more latitude as to modes of proof in the disposition of issues of jurisdictional fact[,]" and jurisdictional facts may be presented by affidavit.  *Local 336, Am. Fed'n of Musicians, AFL-CIO v. Bonatz*, 475 F.2d 433, 437-38 (3d Cir. 1973).

defendant." *Vodenichar v. Halcón Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B)).  CAFA operates as an expansion of diversity jurisdiction[12] and "authorizes federal jurisdiction over class actions even in the absence of complete diversity between the parties, except where the 'controversy is uniquely' connected to the state in which the action was originally filed."  *Id.* (citing *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 149 & n.4 (3d Cir. 2009)); *Farina v. Nokia Inc.*, 625 F.3d 97, 110 (3d Cir. 2010).  CAFA also includes two mandatory exceptions to federal subject matter jurisdiction, known as the "local controversy" and "home state" exceptions.  28 U.S.C. § 1332(d)(4)(A)-(B); *Vodenichar*, 733 F.3d at 503.  This Court has jurisdiction over the remaining state law claims under CAFA because the threshold requirements for CAFA jurisdiction have been met and the local controversy and home state exceptions do not apply.

The threshold requirements for CAFA jurisdiction are met.  The requirement that the matter in controversy exceeds the sum or value of $5,000,000 is met because the amount in controversy is at least $7,626,152.  The requirement that the aggregate number of proposed class members is 100 or more is met because the aggregate number of proposed class members exceeds 100 members.  Finally, the requirement that any class member is a citizen of a state different from any defendant is met because Livi is a Pennsylvania citizen and thus from a different state than Hyatt Corporation and HHC ("Hyatt Defendants"), which are citizens of

---

[12] As in federal diversity jurisdiction, CAFA jurisdiction is generally determined based on the circumstances prevailing at the time of filing.  *See Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009) (Noting that "time of filing" rule under diversity jurisdiction admits exceptions when parties change, and applying this exception to hold that under CAFA, "the local controversy exception requires consideration of the defendants presently in the action."); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011) (Applying principle that "[s]ubject-matter jurisdiction depends on the state of things when suit is filed; what happens later does not detract from jurisdiction already established" to CAFA case.); *Metz v. Unizan Bank*, 649 F.3d 492, 500 (6th Cir. 2011) (Stating that CAFA statutory language "shows that it is the time of filing that matters for determining jurisdiction under CAFA.").

Delaware and Illinois.[13] The only outstanding issue is whether either of the two mandatory

exceptions, the local controversy exception and the home state exception, is applicable.

### A.  Local Controversy Exception

The local controversy exception requires courts to decline to exercise jurisdiction over

class actions that otherwise meet CAFA's jurisdictional requirements where all of the following

elements are met:

> (1) greater than two-thirds of the putative class are citizens of the state in which
> the action was originally filed; (2) at least one defendant is a citizen of the state in
> which the action was originally filed (the "local defendant"); (3) the local
> defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs
> are seeking significant relief from the local defendant; (5) the principal injuries
> occurred in the state in which the action was originally filed; and (6) no other
> class action asserting the same or similar allegations against any of the defendants
> had been filed in the preceding three years.

*Vodenichar*, 733 F.3d 497, 506-07 (summarizing 28 U.S.C. § 1332(d)(4)(A)).

It seems obvious that the first, second, fourth, fifth and sixth elements of this exception

are met.  The third element, that the local defendant's[14] conduct forms a significant basis for the

claims asserted, requires further analysis.  Therefore, it must next be determined, pursuant to the

third element, whether either of the Bellevue Defendants' conduct forms a "significant basis for

the claims asserted."

Under the "significant basis" provision, "[t]he focus is on the conduct in which the local

defendant allegedly engaged and the alleged number of people impacted by it."  *Vodenichar*, 733

F.3d at 507 n.8.  This provision also requires comparing the local defendant's alleged conduct to

the conduct of all of the defendants.  *Kaufman*, 561 F.3d at 156.  "If the local defendant's alleged

---

[13] *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State
and foreign state by which it has been incorporated and of the State or foreign state where it has
its principal place of business . . .").

[14] Here, the local defendants are Bellevue, Inc. and Bellevue Associates ("Bellevue
Defendants").

conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied." *Id*. Furthermore, the local defendant's purported conduct "must be an *important* ground for the asserted claims in view of the alleged conduct of all the Defendants." *Id.* at 157 (emphasis in original).

Livi alleges in the Complaint that the Defendants violate the PMWA, the WPCL, the Philadelphia Administrative Code, and are unjustly enriched by purportedly not paying the Banquet Servers a proper overtime wage and by not distributing the entirety of the collected service charges to the Banquet Servers. Hyatt Corporation is the entity that hires, supervises and pays the Banquet Servers, and therefore is the defendant that allegedly does not pay the proper overtime wage to the Banquet Servers and does not distribute the entirety of the collected service charges to the Banquet Servers. Thus, the entity whose alleged conduct forms the basis of the asserted claims is Hyatt Corporation, an out-of-state defendant. The Bellevue Defendants, the Pennsylvania corporations, are therefore not the entities responsible for hiring, supervising and paying the Banquet Servers, and their actions are thus not a significant part of the alleged conduct of all Defendants nor an important ground for the asserted claims. Therefore, because an element of the local controversy exception fails, the local controversy exception has not been met.

### B. Home State Exception

Under the home state exception, a district court must decline to exercise jurisdiction over a class action that otherwise meets the CAFA jurisdictional requirements, if two-thirds or more members of all proposed plaintiff classes and the "primary defendants" are citizens of the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B).

The first part of this exception is met here because, as described above, over two-thirds of the members of all proposed plaintiff classes are Pennsylvania residents, and therefore citizens of the state in which the action was originally filed.  The applicability of this exception hinges on a determination of which entity or entities are the primary defendants.  The home state exception only applies if *all* of the primary defendants are citizens of the state in which the action was filed, and therefore a determination that a non-local defendant is a primary defendant renders the home state exception inapplicable.  *Vodenichar*, 733 F.3d at 506.  Thus, if one or both of the Bellevue Defendants are the only primary defendants, then the requirements of this exception have been met and the Court must decline jurisdiction.  If however, either of the Hyatt Defendants, the out-of-state defendants, is a primary defendant, then the requirements of the home state exception have not been met, and the Court may accept jurisdiction under CAFA.

The Third Circuit has stated that:

> courts tasked with determining whether a defendant is a "primary defendant" under CAFA should assume liability will be found and determine whether the defendant is the "real target" of the plaintiffs' accusations.  In doing so, they should also determine if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others.  Also, courts should ask whether, given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.

*Id.* at 505-06.

Pursuant to *Vodenichar*, a court must consider "whether the defendant: (1) is the 'real target' of the plaintiff's allegations; (2) has potential exposure to a significant portion of the class; and (3) would sustain a substantial loss as compared to other defendants if found liable." *Torres v. CleanNet, U.S.A., Inc.*, No. 14-2818, 2014 WL 5591037, at *5 (E.D. Pa. Nov. 4, 2014) (citing *Vodenichar*, 733 F.3d at 505-06).  As to the first factor, the "real target" is the defendants that plaintiffs allege are the real wrongdoers, as opposed to defendants who may have to pay

because of the actions of others. *Id.* Regarding the second and third factors, "the Third Circuit has explained that a district court should 'focus on the number of class members purportedly impacted by defendant's alleged actions and the amount the defendant may lose if found liable' in determining whether a defendant has potential exposure to a significant portion of the class and would sustain a substantial loss." *Id.* In doing so, the court must assume liability will be established. *Vodenichar*, 733 F.3d 497 at 505. As noted above, because the home state exception only applies if *all* of the primary defendants are citizens of the state in which the action was filed, a determination that a non-local defendant is a primary defendant renders the home state exception inapplicable. *Id* at 506.

Here, Hyatt Corporation is clearly a "primary defendant," and therefore the home state exception is inapplicable. Applying the first factor, Hyatt Corporation is the "real target" of Livi's allegations because, as described above, it is the entity whose alleged conduct forms the bases of the allegations in the Complaint, and is therefore directly liable to the proposed class and sub-class of Banquet Servers. Applying the second and third factors, Hyatt Corporation has potential exposure to the entire class, as the entity responsible for hiring, supervising, and paying all of the members of the proposed class and sub-class of Banquet Servers. Hyatt Corporation would also sustain the greatest loss if found liable, as the entity responsible for the hiring, supervising and paying of all of the members of the proposed class and sub-class of Banquet Servers and as the entity directly responsible for actions underlying the claims in the Complaint. Because Hyatt Corporation is a non-local defendant and a primary defendant, the home state exception does not apply. The Court therefore has jurisdiction to decide Hyatt's motion for summary judgment.

### III.     LEGAL STANDARD

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## IV.   DISCUSSION

Four counts[15] of the Complaint remain before the Court:

(1) Count II: Violation of the PMWA for failure to pay Livi and the proposed class a rate of 1.5 times their regular hourly wage for overtime hours worked;

(2) Count III: Violation of the PMWA for the retention of a portion of the service charges collected from customers;

(3) Count IV: Violation of the WPCL; and

(4) Count VI: Unjust Enrichment.

### A.  Unpaid Overtime (Count II of the Complaint)

In Count II of the Complaint, Livi alleges that "[b]y regularly and routinely failing to pay Plaintiff and the Class one and one-half times their regularly hourly wage rate for overtime hours worked, Defendants violated the provisions of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.104(c)."  Compl. ¶ 73.  The PMWA provides in relevant part:

> Employes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary: . . . the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek.

43 PA. STAT. ANN. § 333.104(c).

---

[15] Count V of the Complaint alleges that Hyatt violated the Philadelphia Administrative Code, § 9-614. In Livi's sur-reply, Livi stated that "Plaintiff is no longer pursuing her claim under the Philadelphia Gratuity Protection Bill, PHILA. ADMIN. CODE § 9-614."  Pl.'s Sur-Reply 2 n.4. I will therefore grant Hyatt's summary judgment motion on Count V of the Complaint.

Hyatt does not dispute that Livi was not paid 1.5 times her hourly wage for the overtime hours that she worked.  Rather, Hyatt responds that it was exempt from the overtime requirements of the PMWA pursuant to the exemption in 34 PA. CODE § 231.43(f) ("Pennsylvania Code Exemption").[16]  The Pennsylvania Code Exemption provides:

> (f) No employer may be deemed to have violated these §§ 231.41-231.43[17] by employing an employee of a retail or service establishment for a workweek in excess of 40 hours if:
> (1) The regular rate of pay of the employee is in excess of 1 1/2 times the minimum hourly rate applicable.
> (2) More than half of the employee's compensation for a representative period, not less than 1 month, represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

34 PA. CODE ANN. § 231.43(f).

Thus, the essential elements to this exemption are: the employer is a retail or service establishment; the regular rate of pay of the employee is in excess of 1.5 times the minimum hourly rate applicable; and more than half of the employee's compensation for a representative period, not less than 1 month, represents commissions on goods or services.  34 PA. CODE ANN. § 231.43(f).  There is no dispute that Hyatt has met the elements of this exemption that Hyatt is a

---

[16] The PMWA and its regulations also contain a number of other exemptions to the PMWA's overtime provisions.  *See generally* 43 PA. STAT. ANN. § 333.105 (enumerating exemptions to the PMWA's overtime and minimum wage requirements, including, for example, employment in domestic services in or about the private home of the employer). The reference to the "Pennsylvania Code Exemption" refers solely to the exemption involved in the claim in this case.

[17] The language in the regulation that "[n]o employer may be deemed to have violated these §§ 231.41-231.43 by employing an employee . . ." seems to state if the subsequent provisions apply, then the employer is deemed to have not violated the regulation only, not the PMWA itself.  This interpretation is implausible.  Because the statute authorizes the Secretary of Labor and Industry to promulgate regulations, see above, the regulations that it does promulgate must be interpreted to apply to the statute and not solely to the regulations themselves.  *See Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 944 (W.D. Pa. 2011); *Verderame v. RadioShack Corp.*, 31 F. Supp. 3d 702, 705 (E.D. Pa. 2014).

retail or service establishment and that Livi's regular rate of pay was in excess of 1.5 times the applicable minimum wage.  Likewise, the parties do not dispute that throughout the course of Livi's employment, and for the representative period of the year 2013, distributions from service charges constituted more than 50% of her total compensation.  Defs.' Statement ¶¶ A(3) & A(4); Pl.'s Sur-Reply 4.  Because it is undisputed that these elements of this exemption are met, if the distributions that Livi received from service charges are "commissions" under the Pennsylvania Code Exemption, Hyatt was exempt from the PMWA's overtime requirements.

The PMWA and its regulations are silent on the definition of "commissions."  But, as explained below, the FLSA's exemption to its overtime pay requirements for retail or service establishments contains parallel language to the Pennsylvania Code Exemption.  In this situation, Pennsylvania state law directs district courts to look to federal law interpreting the FLSA's parallel exemption in order to analyze a claim under the Pennsylvania Code Exemption.  Under federal precedent interpreting the FLSA's parallel exemption, distributions from service charges are interpreted as commissions.  Applying this federal precedent to the current case, the distributions from service charges that Livi received are commissions under the PMWA, and Hyatt was therefore exempt from the PMWA's overtime requirements.

### a.  Applicability of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

Given that the PMWA and its regulations are silent on the definition of "commissions," the question becomes how to determine what constitutes a "commission" under the Pennsylvania Code Exemption. When interpreting Pennsylvania law, federal courts must predict how the Pennsylvania Supreme Court would likely rule on the issue.  *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996). If the Pennsylvania Supreme Court has not announced a position, the federal courts are instructed to analyze the decisions of the intermediate appellate courts.  *Id.*

The Commonwealth Court of Pennsylvania, in a decision affirmed by the Pennsylvania Supreme Court, instructed that when the state statute substantially parallels the federal statute, it is proper to give deference to the federal interpretation of the federal statute. *Commonwealth, Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd* 580 Pa. 66 (2004). In *Stuber*, the court considered whether an individual was an employee or an independent contractor under the PMWA. *Id.* at 872. The court noted that in that instance the PMWA mirrors the FLSA, that the relevant definitions were virtually identical for purposes of the case, and that neither statute discussed the distinction between an employee and an independent contractor. *Id.* at 873. The court explained that there is federal case law addressing this issue under the FLSA, and that it is proper to defer to federal interpretation of a federal statute when the state statute substantially parallels it. *Id.* Therefore, because the PMWA and FLSA "have identity of purpose" the court held that "that federal case law, and the 'economic reality' test employed by the federal courts, [was] the appropriate standard to use" in determining whether the individual was an employee under the PMWA. *Id.*

Following this reasoning, in a situation where the language of the statutes are parallel, federal courts in Pennsylvania have applied federal case law interpreting the FLSA to their analysis of claims under the PMWA. The Third Circuit noted in a footnote that their analysis of the Motor Carrier Act ("MCA") exemption to the overtime provisions of the FLSA "applies equally to the FLSA and PMWA claims, given the similarities between the MCA in each statute." *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 790 n. 5 (3d Cir. 2016); *see also Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 613 (E.D. Pa. 2015); *Philadelphia Metal Trades Council v. Konnerud Consulting W., A.S.*, No. 15-5621, 2016 WL 1086709, at *5 (E.D.

Pa. Mar. 21, 2016); *Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822, at *7 (E.D. Pa.

Oct. 7, 2016).

It follows from the instruction to apply federal interpretation of a federal statute when

interpreting a parallel state statute, that if the state regulation parallels the language of the federal

statute, the proper procedure is to use the federal interpretation of the federal statute to interpret

the meaning of the state regulation. *See Vanstory-Frazier v. CHHS Hosp. Co.*, No. 08-3910,

2010 WL 22770, at *9 & n.13 (E.D. Pa. Jan. 4, 2010) (interpreting exemptions in PMWA

regulations in same manner as exemptions in FLSA regulations). This makes particularly good

sense where the federal law at issue predates enactment of the state law.[18]

The Supreme Court of Pennsylvania in *Bayada Nurses, Inc. v. Commonwealth, Dept. of

Labor & Indus.*, refused to interpret the PMWA's "domestic services" exemption "*in pari

materia*" with the corollary FLSA exemption, because the state and federal exemptions are

"materially distinct" and do not parallel one another. 8 A.3d 866, 882 (Pa. 2010). In making this

distinction, the Pennsylvania Supreme Court's underlying assumption, consistent with *Stuber,* is

that when the federal and state exemptions parallel one another, the state exemption should be

read in light of federal interpretation of the federal exemption.

### b. Analysis of the Pennsylvania Code Exemption in light of the FLSA

Thus, it is appropriate to look to federal law interpreting the FLSA because the

Pennsylvania Code Exemption parallels the language of its federal counterpart, 29 U.S.C §

207(i).[19] The Pennsylvania Code Exemption parallels a provision in the FLSA, 29 U.S.C. §

207(i) (the "§ 207(i) exemption"). The § 207(i) exemption provides:

---

[18] See *infra* at p. 19.

[19] Additionally, as explained above, following the instruction to apply federal interpretation of a
federal statute to an analysis of a parallel state statute, the proper procedure for interpreting a

No employer shall be deemed to have violated subsection (a)[20] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

Similarly, the Pennsylvania Code Exemption provides:

(f) No employer may be deemed to have violated these §§ 231.41-231.43 by employing an employee of a retail or service establishment for a workweek in excess of 40 hours if:
(1) The regular rate of pay of the employee is in excess of 1 1/2 times the minimum hourly rate applicable.
(2) More than half of the employee's compensation for a representative period, not less than 1 month, represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

34 PA. CODE ANN. § 231.43(f).

Both provisions exempt employees of a retail or service establishment from the

applicable overtime regulations if (1) the regular rate of the employee's pay is in excess of 1.5

times the applicable minimum wage and (2) more than half of the employee's compensation for

a representative period, not less than one month, represents commissions on goods or services.

These provisions are clearly parallel.

---

state regulation that parallels a federal statute is to look to federal interpretation of that parallel federal statute.
[20] The FLSA's requirement to pay a rate of 1.5 times an employee's regular wage for overtime hours worked.  29 U.S.C. § 207(a).

In this case, interpreting the Pennsylvania Code Exemption in light of federal interpretation of the § 207(i) exemption is further appropriate, because the current iteration of the § 207(i) exemption was promulgated in the 1966 Amendments to the FLSA (and included in the 1970 edition of the U.S. Code), and thereafter the Pennsylvania Code Exemption was promulgated in 1977 using the same language.[21]  *See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601 § 402, 80 Stat. 830, 842 (1966); 29 U.S.C. § 207(i) (1970) (effective January 20, 1971); 7 Pa. Bull. 750 (Mar. 19, 1977).  It is reasonable to infer that the drafters of the Pennsylvania Code Exemption purposefully mirrored the language of the § 207(i) exemption and expected that the state exemption would be read in light of the parallel federal exemption. Therefore, it is proper to look to federal case law interpreting the § 207(i) exemption in interpreting the Pennsylvania Code Exemption.

### c.  Interpretation of "Commission" under the FLSA, 20 U.S.C. § 207(i)

Now that it has been established that this Court is directed to look to federal interpretation of the FLSA's parallel exemption, the question becomes whether distributions from service charges are "commissions" under federal law.

In *Mechmet v. Four Seasons Hotels, Ltd.*, the Seventh Circuit addressed "whether the percentage service charges that hotels and restaurants characteristically add to the bill for a banquet, to compensate banquet waiters over and above their regular hourly wage, are 'commissions on goods or services'" for purposes of the § 207(i) exemption.  825 F.2d 1173,

---

[21] The only difference between the version of § 207(i) in the 1970 edition of the U.S. Code and the version of § 207(i) in the current code is that the 1970 version states "No employer shall be deemed to have violated subsection (a) *of this section* by employing . . ." and the current version states "No employer shall be deemed to have violated subsection (a) by employing . . ." (emphasis added).  This minute difference of language between the versions (the inclusion of the words "of this section") does not affect the substance of the statute nor the language that the Pennsylvania Code Exemption parallels.

1174 (7th Cir. 1987). *Mechmet* is factually identical to the case at bar. *Mechmet* involved the claims of eleven banquet waiters employed by the Ritz-Carlton for unpaid overtime. *Id.* The Ritz-Carlton added an 18% service charge to every banquet charge and distributed 16% among the staff serving the banquet, according to rank, and then the rest among the banquet sales staff. *Id.* The Seventh Circuit held that "[c]ommission income is a permissible characterization of the banquet service charges that the banquet waiters received, and one that advances the statutory purposes." *Id.* at 1177. The Seventh Circuit concluded that although exemptions to the FLSA must be narrowly construed, "[g]iven the purposes of the [FLSA] and of its exemptions, the percentage service charges used to compensate the Ritz-Carlton's banquet waiters can only be 'commissions.'" *Id.* at 1177-78. The Seventh Circuit further noted that it "attach[ed] no weight to the fact that the collective bargaining agreement between the Ritz-Carlton and its waiters describe the waiters' income from the service charge as a 'gratuity' rather than as a 'commission.' A 'gratuity' is a tip. The plaintiffs concede that the service charge is not a tip, since it is not discretionary with the customer." *Id.* at 1177. *See also Nascembeni v. Quayside Place Partners, LLP*, No. 09-23322, 2010 WL 2351467, at \*2 (S.D. Fla. Jun. 11, 2010) (applying *Mechmet* to hold that a service charge added by a hotel to every banquet bill and then distributed in whole or in part to the hotel's banquet staff is a commission under the FLSA's § 207(i) exemption); *Diaz v. Amedeo Hotels Ltd. P'ship*, No. 12-4418, 2016 WL 1254243, at \*3 (E.D.N.Y. Mar. 29, 2016) (on appeal) (citing *Mechmet* for proposition that "[m]andatory service charges for waiters that are calculated as a percentage of a total banquet bill qualify as commissions for purposes of the 7(i) exemption.").

    Both *Mechmet* and another opinion on the § 207(i) exemption, *Yi v. Sterling Collision Ctrs.*, 480 F.3d 505 (7th Cir. 2007), explain that the nature of certain businesses make overtime

payment an irrational method of compensation as compared to commission payments. Employees in certain businesses, such as banquet events, may inherently work irregular hours because demand for the service or product is irregular. *Mechmet*, 825 F.2d at 1176-77; *Yi*, 480 F.3d at 508.  Requiring an employer to pay overtime to an employee during the times in which demand is high would mean that even if an employee's hours over a year average to the same as a regular hourly employee, he or she would have a higher annual income even though he or she hadn't worked more hours than a regular hourly employee.  *Yi*, 480 F.3d at 508.

The only Third Circuit case to address whether a business's method of compensating its employees represented "commissions" for purposes of the § 207(i) exemption is *Parker v. NutriSystem, Inc.*, 620 F.3d 274 (3d Cir. 2010).  In *NutriSystem*, sales associates were compensated for each sale they closed with a flat-rate payment.  *Id.* at 276.  The payment received by the sales associates was not directly tied to the cost to the consumer, but varied according to the time of day during which the sale was closed and whether the sale was closed during an inbound or outbound call.  *Id.*  The Third Circuit held that "when the flat-rate payments made to an employee based on that employee's sales are proportionally related to the charges passed on to the consumer, the payments can be considered a bona fide commission rate for purposes of §7(i)."  *Id.* at 283.  Because the compensation scheme constituted a bona fide commission rate, the Third Circuit held that it was a "commission" under the FLSA.  *Id.* Relevant to the Court's analysis, *NutriSystem* endorsed the approach taken in *Mechmet* to analyze whether a method of payment qualifies as "commissions" under the § 207(i) exemption. *Id.* at 284 (Finding that "NutriSystem's plan does not offend the purposes of the FLSA and the overtime provisions discussed *supra* in *Mechmet*, 825 F.2d at 1175-76 . . .").

In their briefings, the parties dispute whether the service charges are negotiable.  This is not a genuine dispute of fact.[22]  It is undisputed that each Banquet Event contract contains a service charge provision and that the service charge provisions state that the charge would be added to the costs of food and beverage, and sometimes to the cost of room rental.  Pl.'s Statement ¶ 26; Defs.' Statement 1.  The deposition testimony clearly states that the percentage charged in these provisions was not negotiable,[23] and the contracts uniformly include a percentage service charge consistent with Hyatt's policy at the time of the contract.[24]  The service charges imposed by Hyatt in the Banquet Event contracts are thus not negotiable.

---

[22] There is no evidence in the record that the service charges imposed by Hyatt are negotiable, and Livi's arguments to the contrary are unavailing.  Livi cites to Hyatt's Reply brief for the proposition that service charges "were agreed to" by customers.  Pl.'s Sur-Reply 10 n. 24. However, the full sentence from which Livi quotes states that "[i]t is undisputed that [service charges] were contained in the contracts for the banquet events, were agreed to in advance, almost always paid in advance, and were mandatory."  Defs.' Reply 8.  Livi also points to a food and beverage agreement prepared by a third-party for an event at XIX ("Third Party Agreement"), executed in addition to the "standard" Banquet Event contract.  Pl.'s Sur-Reply 10 n. 24; Pl.'s Statement (Unredacted Version) ¶ 38, ECF No. 47.  Livi articulates that the Third Party Agreement contained numerous references to "gratuities."  Pl.'s Statement (Unredacted Version) ¶ 38.  This is the sole agreement presented by Livi that uses the term "gratuity."  Livi states that this agreement was "negotiated" and showed that the parties agreed that the service charge is a gratuity.  Pl.'s Sur-Reply 10.  As in *Mechmet*, no weight is attached to the fact that the service charge is called a "gratuity" in the Third Party Agreement.  In the "standard" contract for the same event there is a "service charge," and in the contract prepared by the third-party there is a "gratuity."  *See* Pl.'s Statement (Unredacted Version), Ex. I at Hyatt00276, Hyatt00281-82.  Neither contract states that these charges were negotiable by the customer.  The Court notes that there are discrepancies between the terms of the Third Party Agreement and the "standard" contract, including whether the service charge would be applied on minimum food and beverage costs and the cost of room rental.  However, neither party has raised these discrepancies.

[23] *See* Cowles Dep. 64:8-12; 64:16-23 ("Q. And they pay this service charge over and above the cost of the food, the beverages and in some instances the room rental; is that right? A. Yes . . . Q. Currently what's the percentage of that service fee? A. 21 percent. Q. Do you know if that is negotiable? A. No. Q. No, you don't know? A. It's not negotiable.").

[24] *See e.g.*, Pl.'s Statement ¶ 28 (At some point between 2011 and 2012, Hyatt increased the service charge from 20% to 21%); *See also* Pl.'s Statement, Ex. K at Hyatt000422;  Pl.'s Statement (Unredacted Version), Ex. I at Hyatt00274.

Therefore, applying federal case law interpreting the § 207(i) exemption to the Pennsylvania Code Exemption, "[c]ommission income is a permissible characterization of the banquet service charges that the banquet waiters received" from Hyatt.  *Mechmet*, 825 F.2d at 1177.  The Third Circuit's endorsement of *Mechmet* supports this conclusion.[25]  Because there are no genuine disputes of material fact, Hyatt has met its burden of proving that the payment received by Livi was a commission, exempting Hyatt from the PMWA's overtime requirements under the Pennsylvania Code Exemption.  I will therefore grant Hyatt's summary judgment motion on Livi's claim for unpaid overtime under the PMWA (Count II of the Complaint).

### B.  Unpaid Distributions from Service Charges (Count III of the Complaint)

In Count III of the Complaint, Livi claims that Hyatt has violated § 333.103(d)(2) of the PMWA by retaining a portion of the service charges imposed in banquet contracts.  Compl. ¶¶ 76-79. Specifically, Livi claims that Hyatt violated language in that section which provides that "where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe . . . ." Compl. ¶¶ 76; 43 PA. STAT. ANN. § 333.103(d)(2). Although the parties make numerous other arguments regarding whether the service charges may be "gratuities" under the PMWA, the threshold legal question is whether Livi may properly state a claim for withheld portions of service charges under § 333.103(d)(2) of the PMWA.

Section 103(d) of the PMWA provides, in relevant part:

> In determining the hourly wage an employer is required to pay a tipped employe, the amount paid such employe by his or her employer shall be an amount equal to: (i) the cash wage paid the employe which for the purposes of the determination

---

[25] The Third Circuit also noted that the sales associates' pay ranged from $40,000-$80,000 per year, and therefore "were not the lower-income type employees contemplated to be protected by the overtime provisions." *NutriSystem*, 620 F.3d at 284.  The Court notes that Livi's compensation in 2013 falls into the above-mentioned range.

shall be not less than the cash wage required to be paid the employe on the date immediately prior to the effective date of this subparagraph; and (ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under [§ 333.104] of this act. The additional amount on account of tips may not exceed the value of tips actually received by the employe. The previous sentence shall not apply with respect to any tipped employe unless:

(1) Such employe has been informed by the employer of the provisions of this subsection;

(2) All tips received by such employe have been retained by the employe and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect; where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe; except that this subsection shall not be construed to prohibit the pooling of tips among employes who customarily and regularly receive tips.

43 PA. STAT. ANN. § 333.103(d).

Section 103(d) of the PMWA allows an employer to satisfy its minimum wage obligations by taking a "tip credit" towards its minimum wage obligations. The statute provides that the wage paid to the employee must be an amount equal to: (i) the cash wage paid the employee ($2.83 an hour)[26] and (ii) an additional amount on account of tips received by the employee which is equal to the difference between the wage in (i) and the minimum wage in effect ($7.25 an hour). Thus, the employer can pay a cash wage of $2.83 and count the employee's tips in making up the difference between the cash wage paid, and the mandatory minimum wage.

---

[26] *See* 34 PA. CODE ANN. § 231.101(b) ("The minimum wage credit for tipped employees is $2.83 per hour under section 3(d) of the act (43 P. S. § 333.103(d)) with all of the following conditions:

(1) An employer shall pay the difference when the employee's tips plus the credit for tipped employees does not meet the Pennsylvania minimum wage contained in subsection (a).

(2) The tip credit applies only if an employee received over $30 in tips for a month."); *see also Mackerth v. Kooma, Inc.*, No. 14-4824, 2015 WL 2337273, at *7 n.8 (E.D. Pa. May 14, 2015) ("Pennsylvania permits a smaller tip credit which requires tipped employees to be paid an hourly wage of at least $2.83. 34 Pa. Code § 231.101.").

The ability of an employer to take a tip credit is contingent on two conditions being met. The first condition, §103(d)(1), is that the employee must be informed by the employer of the provisions of the subsection. The second condition, §103(d)(2), is that "[a]ll tips received by such employe have been retained by the employe and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect; where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe . . . ." In other words, the tips must be retained in full by the employee. *See Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 14-3227, 2015 Pa. Dist. & Cnty. Dec. LEXIS 11, at *14 (C.P. Apr. 24, 2015) ("Like the FLSA, the MWA provides that the tip credit calculation 'shall not apply with respect to any tipped employee unless: (1) [s]uch employe has been informed by the employer' of the tip credit arrangement; and '(2) [a]ll tips received by such employe have been retained by the employe . . .' 43 P.S. § 333.103(d)(1)-(2)."). Therefore, the language to which Livi cites as entitling her to the full amount of the service charges is a condition precedent to an employer taking a tip credit to offset its minimum wage obligations.

The parties do not dispute Livi's hourly rate was more than 1.5 times the minimum wage. Therefore, it is clear, as Hyatt asserts, that Hyatt did not take a "tip credit" to offset the wage it was required to pay Livi.[27] Because the provision from which Livi extracts her claim is a condition precedent to an employer taking a tip credit, and Hyatt did not take a tip credit, the provision does not apply to Livi.[28] Therefore, without deciding whether or not the service

---

[27] Livi does not address or dispute that Hyatt did not take a tip credit towards its obligation to pay her the minimum wage, and therefore concedes the point. An apt concession, given that her hourly rate was more than 1.5 times the minimum wage.

[28] The Court recognizes that under a literal reading of the statute, the conditions at §§ 103(d)(1) & (2) are conditions precedent to the sentence stating that "[t]he additional amount on account of

charge may be a "tip," Livi was not entitled under this section to receive a distribution from the entirety of the service charges collected. I will therefore grant Hyatt's summary judgment motion on this claim (Count III of the Complaint).

### C.  Pennsylvania's Wage Payment and Collection Law, 43 PA. STAT. § 260.1, *et. seq.* (Count IV of the Complaint)

In Count IV of the Complaint, Livi claims that "[b]y their actions" Hyatt violated the WPCL, and specifically a portion of § 260.3 of the WPCL, which provides:

> Every employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer.

43 PA. STAT. ANN. § 260.3(a); Compl. ¶¶ 81-82.

Livi articulates two bases for this claim.  First, Livi contends that her claim for wages under the PMWA may be recovered under the WPCL. Second, Livi claims that she is a third-party beneficiary to the Banquet Event contracts and therefore "Defendants are subject to a binding legal duty to provide the compensation Plaintiff seeks in this action."  Pl.'s Opp. 19-20. Hyatt claims that Livi was paid all compensation owed to her under the terms of her employment with the Hyatt at the Bellevue and that by asserting a third-party beneficiary claim, "Plaintiff is asking the Court to read into the banquet contracts a legal entitlement that is not there". Defs.' Mot. at 6; Defs.' Reply at 13.  As already explained, Livi's claims under the PMWA fail, and therefore Livi's claims under the Banquet Event contracts will be addressed.

---

tips may not exceed the value of tips actually received by the employe." However, a literal reading of the statute would therefore allow an employer to claim more in tips than received by the employee, if the subsequent conditions were not met, and therefore not pay its employees a wage equal to the minimum wage.  This reading runs contrary to a PMWA regulation which provides that that "[a]n employer shall pay the difference when the employee's tips plus the credit for tipped employees does not meet the Pennsylvania minimum wage".  34 PA. CODE ANN. § 231.101(b). Even under this literal reading, Livi is still not entitled to the entirety of the service charges because Hyatt did not take a tip credit in the first place, and therefore necessarily did not claim more in tips than received by Livi.

"'[T]he WPCL provides employees a statutory remedy to recover wages and other benefits that are contractually due to them' . . . 'To present a wage payment claim, the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation.'" *McGuckin v. Brandywine Realty Tr.*, 185 F. Supp. 3d 600, 606 (E.D. Pa. 2016) (*quoting  Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 953-54 (Pa. Super. Ct. 2011)).

Pennsylvania has adopted the Restatement (Second) of Contracts § 302 as a guide for the analysis of third party beneficiary claims. *Scarpitti v. Weborg*, 609 A.2d 147, 149-50. The Restatement provides that:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id. (quoting* Restatement (Second) of Contracts § 302 (1979)).

Summarizing these requirements, the Pennsylvania Supreme Court has held,

> that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless,* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Scarpitti*, 609 A.2d at 150-51 (internal citations omitted) (emphasis in original).

Here, it is undisputed that there is no express intention to benefit the Banquet Servers in the Banquet Event contracts themselves.[29] Furthermore, the circumstances are not so compelling

---

[29] On or after November 2015, Hyatt changed its banquet contracts to expressly state that a specified percentage of the service charges on food, beverage and room rental would be remitted to Banquet Servers. It is undisputed that the service charges on the cost of room rental was not

that recognition of the Banquet Servers' right is appropriate to effectuate the intention of the parties.

Because the Banquet Event contracts do not create a "contractual entitlement to compensation from wages," as required to state a claim under the WPCL, I will grant Hyatt's summary judgment motion on Count IV of the Complaint.

### D.  Unjust Enrichment (Count VI of the Complaint)

Livi alleges in Count VI of the Complaint that "Defendants devised and implemented a plan to increase their profits by depriving Plaintiff and the Class of: (1) their rightful rate of overtime pay; and (2) the full amount of gratuities due them." Compl. ¶ 33.  Livi contends that Hyatt was unjustly enriched "[b]y securing the work and efforts of Plaintiff and the Class without compensating them at their rightful level of pay," thereby reducing Hyatt's overhead costs and increasing its profits. Compl. ¶ 34.  Because Livi's claims for unpaid overtime and unpaid service charge distributions have been dismissed, Livi's claim for unjust enrichment also fails. Hyatt's summary judgment motion will be granted on Count VI of the Complaint.

### V.    CONCLUSION

For the reasons set forth above, I will grant Hyatt's motion for summary judgment on all remaining counts of Livi's Complaint.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

_____

remitted to Banquet Servers. However, it is also undisputed that Livi was employed at the Hyatt at the Bellevue until on or around October 29, 2014. Therefore, the contracts that post-date the termination of her employment are not relevant to the consideration of her claim for unpaid wages.